IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

# JEREMY FOSTER WILSON v. JENNIFER ELAINE PARIS WILSON (LADD)

**Direct Appeal from the General Sessions Court for Warren County**
**No. 6391     Larry G. Ross, Judge**

---

**No. M1999-01274-COA-R3-CV - Decided June 20, 2000**

---

A divorce decree granted both parents joint custody of their young child.  When the child reached school age, the mother and father were living in different towns, and they both filed petitions to be granted primary custody.  The trial court granted primary custody to the father, with reasonable visitation for the mother.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court**
**Affirmed and Remanded**

CANTRELL, P.J., M.S., delivered the opinion of the court, in which CAIN and COTTRELL, JJ. joined.

Timothy S. Priest, Winchester, Tennessee, for the appellant, Jennifer Elaine Paris Wilson (Ladd).

Susan N. Marttala, Winchester, Tennessee, for the appellee, Jeremy Foster Wilson.

## OPINION

### I.

Justin Foster Wilson was born on September 14, 1994.  His parents, Jeremy and Jennifer Wilson divorced fifteen months later.  The divorce decree, filed on December 11, 1995 in the General Sessions Court for Warren County, granted the divorce to Jeremy Wilson on the ground of inappropriate marital conduct.  Both parties were awarded joint custody of Justin, with physical custody to alternate on a weekly basis.  No child support was ordered.  The joint custody arrangement worked fairly well, although for most of the time, the parties found it advantageous to alternate custody every two or three days rather than weekly.

After the divorce, Jeremy Wilson continued to live in the log home he and his father had built on land adjoining his parents' property in McMinnville.  Jennifer moved into an apartment in McMinnville, and then purchased a house near her parents' home in the Centertown community in Warren County.  She subsequently sold the Centertown house and moved to Tullahoma.  On

September 12, 1998, Jennifer married Elliott Ladd. Mr. Ladd's 16-year-old son and 8-year-old daughter from a previous marriage lived with him in a 4 bedroom house in Tullahoma. Jennifer moved into the house at the time of her marriage.

As Justin approached the age of five, the question arose as to whether he should go to school in McMinnville or Tullahoma. On March 3, 1999, Jennifer Ladd filed a petition to modify custody, in which she asserted that it was in Justin's manifest best interest that she be granted absolute custody and that Justin be enrolled in a school near her. On April 5, 1999, Jeremy Wilson filed an answer and counter-petition for custody.

After a full evidentiary hearing on August 11, 1999, the trial court granted custody to the father, subject to reasonable visitation by the mother. The mother was also ordered to pay child support. This appeal followed.

**II**.

The sole issue raised on appeal is whether the trial court erred in granting primary custody of Justin to his father. The trial judge admitted that it was difficult to decide between the competing claims of the parents, but he ultimately found that it was in the child's best interest to be placed in his father's custody. Our review of this finding of fact is de novo upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Rule 13(d), Tenn. R. App. P.

Fortunately for our review, there is very little dispute as to the pertinent facts, but only as to the relative weight those facts were entitled to in the court's best interest analysis. Tenn. Code. Ann. § 36-6-106 sets out the factors for the court to consider in determining the best interest of a child in matters of custody:

> (1) The love, affection and emotional ties existing between the parents and child;
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
> (4) The stability of the family unit of the parents;
> (5) The mental and physical health of the parents;
> (6) The home, school and community record of the child;
> (7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

The trial court applied the relevant statutory factors in a conscientious manner, and concluded that some of them favored Mr. Wilson, some favored Mrs. Ladd, and some were equally favorable to both parents. The court found, for example, that the ties of love and affection between mother and child were equal in strength to those between father and child. There can be no doubt that both mother and father are fit parents, and that they both continue to play an important role in Justin's upbringing.

The mother argues that she has been the primary caregiver, because she was the one who involved Justin in social and church-related activities, and the one who took Justin to the doctor when he was sick. The trial judge noted that the disposition of both parents to provide the child with food, clothing and medical care was about equal, but conceded that if he had to designate the one who had been the primary caregiver, she would get the nod, because "if nothing else, just for the times that she took the child to the doctor. Or maybe, that is just a woman thing as opposed to a man thing. Maybe the women just do that sort of thing."

The appellant argues that this remark amounts to reversible error by the trial court, because it shows that the judge did not give proper weight to the second factor provided by the statutory scheme for determining child custody. While the judge perhaps made an unfortunate choice of words, we do not believe that it amounts to reversible error. Insofar as factor two favored one of the parents over the other, he found that it favored the appellant, but he also found that other factors weighed heavily in favor of the father.

The trial court determined that Justin would be better off in his father's custody than his mother's because of the greater continuity and stability offered by Mr. Wilson. The proof showed that Mr. Wilson has worked for the City of McMinnville for at least five years, and that he continues to live in the same home that the parties shared when Justin was born.

Jeremy Wilson's parents live next door, and his mother testified that she is willing and able to help him with Justin. The child's maternal grandmother and great-grandparents and other relatives also live in the McMinnville area. Justin's maternal grandmother sees him at least once a week by agreement with the paternal grandmother and with her former son-in-law.

Mrs. Ladd notes that Mr. Wilson's work hours are 7:30 a.m. to 3:30 p.m. and that in order to be at work on time, he will have to drop Justin off at school more than half an hour before the bell

rings (there is a program at the school for children who arrive early). The maternal grandmother will have to pick Justin up at school when it lets out at 2:30, and keep him in her home until Mr. Wilson gets home from work.

The appellant states that Mr. Ladd earns a sufficient income to enable her to stay home and take care of Justin full-time, and also that he is capable and willing to assist her in raising Justin. She thus argues that she can be a full-time parent to Justin, while Mr. Wilson cannot. She also claims that Justin has become very attached to his stepbrother and stepsister.

The record does not contradict the appellant's assertions, but it includes facts that add an element of uncertainty to her situation. She and Mr. Ladd had both previously worked at the Bridgestone plant near McMinnville. They had both suffered injuries on the job, and are currently involved in workers compensation lawsuits. The appellant has had to undergo carpal tunnel surgery on both hands as well as shoulder surgery.

Mr. Ladd suffered a back injury, and his doctors placed lifting restrictions on him that made it impossible for him to resume work at Bridgestone. He subsequently began an asphalt sealing business, with all labor being done by himself and two employees. As we indicated above, the business has been successful enough to enable the appellant to stay home and raise the children. But Mr. Ladd had only been in business for a short time when the hearing was conducted, and the long-term prospects of the business, and thus of the appellant's plan to be a stay-at-home mom, remain uncertain.

Further, while we have no reason to doubt the strength of their bond, we note that appellant had been married to Mr. Ladd for less than a year at the time of the custody hearing, and that Mr. Ladd has been married three times previously. It is significant that no family members of Mr. or Mrs. Ladd appear to reside in Tullahoma, so if problems develop for either of them, assistance might be hard to find.

Of course, every situation carries with it some degree of risk. For example, Mr. Wilson's mother is diabetic, so his reliance upon her for Justin's after-school care might be affected by a worsening of her condition. On balance, however, we cannot say that the evidence preponderates against the trial court's finding that Mr. Wilson can offer more continuity and stability to his son than can Mrs. Ladd, and therefore that it is in Justin's best interest that custody be placed in his father.

**III.**

The judgment of the trial court is affirmed. Remand this cause to the General Sessions Court of Warren County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Jennifer Elaine Wilson (Ladd).